Darrell WATSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 09 85 228 CR.

Court of Appeals of Texas,
Beaumont.

Oct. 15, 1986.

Phillip W. Swisher, Conroe, for appellant.

J. Lynn Martin, Asst. Dist. Atty., Conroe,
for appellee.

OPINION

DIES, Chief Justice.

Appellant was convicted by a jury in Cause Number 18,121 for forgery, enhanced as a habitual offender, and punishment was assessed at 55 years confinement in the Texas Department of Corrections. The trial was held on September 4, 1985. By his first point of error, appellant argues that the trial court erred in failing to grant his motion to dismiss the indictment for violation of *TEX.CODE CRIM.PROC. ANN. art. 32A.02* (Vernon Pamph Supp. 1986), hereinafter referred to as the Speedy Trial Act.

Appellant was arrested on November 10, 1984, for forgery. On December 19, 1984, he was indicted for forgery in Cause Number 17,830. This indictment alleged that the appellant passed a forged check to Paul McCurry on November 10, 1984, and also contained two enhancement paragraphs. The State announced ready for trial in Cause Number 17,830 on January 25, 1985.

On April 17, 1985, appellant was indicted for forgery in Cause Number 18,121. This indictment alleged that appellant passed a forged check to Paul McCurry and Angela Lilley on November 10, 1984. This indictment also alleged that appellant possessed a forged check with intent to pass it on November 10, 1984. The new indictment also contained three enhancement paragraphs, and gave notice of the State's intention to rely on secondary evidence to prove the contents of the check.

Appellant argues that the State's announcement of ready, made in Cause Number 17,830, does not carry over so as to be effective in Cause Number 18,121. If the State's announcement of ready did not carry over to the offense charged in the later indictment, of which the jury found appellant guilty, then the State had the burden of proving it was ready for trial within the meaning of the Speedy Trial Act. But, if the State's announcement of ready was effective in Cause Number 18,121, then the defendant had the burden to prove

the State was not ready. *See Barfield v. State,* 586 S.W.2d 538 (Tex.Crim.App.1979).

Since neither the State nor appellant introduced any evidence as to whether the State was, in fact, ready for trial within 120 days from the date of appellant's arrest, the issue of whether the State's announcement of ready was effective under the second indictment is determinative of our disposition of this point of error.

Where the first indictment alleged theft and a subsequent indictment alleged burglary, each offense arising from the same transaction, the State's announcement of ready in the first case did not effectively carry over to the second. *See Richardson v. State,* 629 S.W.2d 164 (Tex.App.—Dallas 1982, pet. ref'd). The Court of Appeals in *Richardson, supra,* held that since the two indictments charged different offenses, subject to different proof, that they were not the same "case", and for this reason, the State's announcement of ready in one case would not apply to the other case. But, where the first indictment alleged possession of tetrahydrocannabinol and the second indictment alleged possession of marihuana, and the proof indicated that only one of the drugs was possessed, the defendant's waiver of his rights under the Speedy Trial Act in the first case does apply in the second case. *See Rosebury v. State,* 659 S.W.2d 655 (Tex.Crim.App.1983).

In *Rosebury, supra,* the Court of Criminal Appeals drew a distinction between the situation in *Richardson, supra,* and the situation in that case. The Court of Criminal Appeals noted that while in *Richardson* the two indictments alleged two distinct offenses, that in *Rosebury* only a single offense had been committed and a single offense was alleged, although at first erroneously pleaded. *See Rosebury, supra,* at 657. In the present case the fact that the same offense was charged in both indictments is readily apparent. The tenor clause in each indictment contains a photocopy of the same check. We, therefore, hold that the State's announcement of ready in Cause Number 17,830 was effective in Cause Number 18,121. Fur-

thermore, since appellant introduced no evidence to rebut the presumption that the State was ready for trial within 120 days after appellant's arrest, the trial court did not err in denying appellant's motion to dismiss. Appellant's first point of error is overruled.

By his second point of error, appellant argues that the evidence is insufficient to support his conviction because there is no evidence that the forged writing is a check. The instrument shown in the indictment and the one introduced at trial appear to be incomplete, though identical. There was testimony that the defendant passed the instrument introduced at trial to Angela Lilley and asked her to cash it for him. We hold that the instrument introduced and the testimony of Angela Lilley, together, were sufficient to prove, beyond a reasonable doubt, that the instrument in question was a check, as alleged in the indictment. Appellant's second point of error is overruled.

In his third point of error, appellant urges that the trial court erred in denying his motion for directed verdict because the State failed to prove that appellant passed the check to Paul McCurry as alleged in the indictment. The indictment alleged that appellant passed the check to Paul McCurry and Angela Lilley. The testimony at trial indicated that appellant originally gave the check to Angela Lilley, who worked in the courtesy booth of the grocery store. Ms. Lilley testified that she gave the check to Dale Clowers, one of the store managers, because she was unfamiliar with the name of the company on whose account the check was drawn. She also testified that Mr. Clowers was also unfamiliar with that company, and he gave the check to Paul McCurry, another store manager. Paul McCurry testified that he asked appellant where he lived. The appellant stated he lived in New Caney though the driver's license he had tendered with the check showed a Houston address. Mr. McCurry testified that he became suspicious that the check was not valid and he had decided not to cash the check when appellant grabbed for the check, tore it, and ran from the store. The application paragraph of the trial court's charge to the jury required that the State prove that appellant passed the check to both Paul McCurry and Angela Lilley.

Appellant relies upon *Stanley v. State*, 646 S.W.2d 447 (Tex.Crim.App.1983), and *Vestal v. State*, 283 S.W.2d 955 (Tex.Crim. App.1955), as authority that the State's proof was insufficient. In *Stanley, supra,* the defendant entered a bank and asked to see a bank officer named Covel because he wanted to cash a check, but did not have proper identification. The defendant was told that Mr. Covel was not in the bank, and was then taken to see bank officer Hutts. Mr. Hutts asked defendant a few questions, approved the check, and sent the defendant to a teller who cashed the check. The State alleged that the defendant passed the check to Mr. Hutts. The defendant, on appeal, argued that the State had failed to prove he had passed the check to Hutts. The Court of Criminal Appeals held that the evidence was insufficient to support a finding that defendant passed the check to Hutts.

In *Vestal, supra,* the defendant presented a check to a checking clerk in a grocery store. The clerk was not authorized to cash the check without approval by her superior. The defendant was directed to Mr. Taylor, the assistant manager, for his approval. Mr. Taylor approved the check and returned it to the defendant, who took the check back to the clerk, who accepted the check. The indictment alleged that the defendant passed the check to Taylor. The defendant claimed on appeal that there was a fatal variance between the indictment and the evidence at trial. The Court of Criminal Appeals held that the variance was fatal and defendant's conviction was reversed.

The State argues that since the evidence shows that McCurry handled the transaction, there is no variance. The State relies on *Roach v. State*, 586 S.W.2d 866 (Tex. Crim.App.1979), and *Woodard v. State*, 700 S.W.2d 617 (Tex.App.—Corpus Christi

1985, no pet.). In *Roach, supra,* the defendant initially presented a money order to a salesgirl, who said that Mr. Nixon would have to approve the transaction. Nixon accepted the money order and gave the defendant cash in return for it. The Court of Criminal Appeals held that since Nixon authorized the money order and cashed it for the defendant, that the evidence was sufficient to prove that defendant passed the money order to Nixon as alleged.

In *Woodard, supra,* the defendant presented a check to a teller at a drive-in banking facility. The teller referred the check to Mary Creek. Creek suspected that the defendant might not be the payee of the check. She requested identification and asked which person in the car purported to be the payee. Upon examining the identification card, Creek determined that the person whose picture appeared on the card was not the person who presented the check. The indictment alleged that the defendant passed the check to Mary Creek. The Court of Appeals held that since Creek accepted the check, asked the person who presented the check to identify himself, checked the account number on the bank computer, and otherwise handled the transaction, the evidence established that the defendant passed the check to her.

■ We believe that where a person presents a forged instrument to one individual, and allows the instrument to be given to a second individual with the intention that the second individual will accept and give value in return for the instrument, he has passed the instrument to the second individual. *See Woodard, supra.* The intent of the person who allegedly passed the instrument is the issue, and not whether the second individual actually does accept the instrument and give value for it. If the accused presents, or allows to be presented, an instrument to a person with the intent that such person only authorize another to accept it and give value for it, he has not passed the instrument to that person. *See Vestal, supra.* But, the act of passing the instrument is completed when

the accused allows it to be given to someone, with the intent that such person should accept it and give value for it. *See McGee v. State,* 681 S.W.2d 31 (Tex.Crim. App.1984).

■ In the present case, the appellant was present when the check was given to Mr. McCurry, and when Mr. Clowers pointed out the appellant as the person to whom the check belonged. Mr. McCurry asked the appellant questions about the check and his correct address. Appellant attempted to explain that he had two addresses, one of them local. We hold that the jury could reasonably infer from the evidence that the appellant had allowed the check to be given to McCurry with the intent that he would cash it. Appellant's third point of error is, therefore, overruled.

■ In his fourth point of error, Appellant argues that the trial court erred in denying his motion for instructed verdict because there is a fatal variance between the purport clause and the tenor clause of the indictment. The purport clause alleges that the check was signed by Monica Quartermine, while the tenor clause alleges it was signed by Monica Quatermine. The State argues that the doctrine of idem sonans applies so that the different spellings of the name in the indictment are not repugnant. Since no evidence shows that these names are patently incapable of being sounded the same or that the appellant was misled to his prejudice by the misspelling, the two names must be considered idem sonans. *See Malone v. State,* 630 S.W.2d 920 (Tex.Crim.App.1982) (opinion on rehearing). Appellant's fourth point of error is overruled.

■ By his fifth point of error, appellant argues that there is a fatal variance between the purport clause of the indictment, which alleged that the check was drawn on the account of "Industrial Marketing Associates", and the evidence introduced at the trial. At trial, the State proved that the check was drawn on the account of "Consumer Industrial Marketing Associates." Whether omission from

the indictment of some part of the instrument constitutes a fatal variance turns on the materiality of the omitted matter to the sufficiency of the alleged terms and conditions of the instrument without the omitted matter. *McKellar v. State,* 641 S.W.2d 240, 242 (Tex.Crim.App.1982). Under the *McKellar* test, we hold that omission of "Consumer" from the indictment did not create a fatal variance between the indictment and the proof. The name of the party on whose account the check was drawn was not essential to the check, and therefore not essential to the allegation of the check. Appellant's fifth point of error is overruled.

The judgment of the trial court is affirmed.