

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00006-CR

_____

JORDAN MICHAEL BARTON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-17-26358

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

Pursuant to a plea agreement, the trial court convicted Jordan Michael Barton of indecency with a child by exposure[1] and sentenced him to ten years' imprisonment. The trial court suspended the sentence and placed Barton on community supervision for six years. Over four years later, the State filed a motion to revoke Barton's community supervision, alleging that Barton had violated his conditions of community supervision by providing a deceptive response to a scheduled polygraph examination on or about December 9, 2022. After a hearing on the motion, the trial court found the State's allegation "true," revoked Barton's community supervision, and sentenced him to ten years' imprisonment.

On appeal, Barton contends that the trial court abused its discretion by revoking his community supervision. Because a preponderance of the evidence supports the trial court's finding that Barton violated the conditions of his community supervision, we affirm the trial court's judgment.

## I.    Background

When the trial court convicted Barton and placed him on community supervision, it ordered that he abide by sixteen special conditions for sexual offenders, in addition to the trial court's standard conditions of community supervision. Those special conditions included condition number 33, which required Barton to voluntarily submit to polygraph testing as directed by his supervising officer, and provided that failure to submit to the polygraph, or providing deceptive responses, was a violation of his community supervision. The State's

---

[1]*See* TEX. PENAL CODE ANN. § 21.11(a)(2)(B).

motion to revoke Barton's community supervision alleged that he had violated condition number 33 by providing a deceptive response to a scheduled polygraph examination on or about December 9, 2022.

At the hearing on the State's motion, Barton pled "not true" to the allegation. Richard Wood, a polygraph examiner, testified that he administered a polygraph examination to Barton on December 9, 2022, at the request of the Fannin County Community Supervision and Corrections Department. The relevant questions in the examination follow: "Since June 2021 have you had sexual contact with anyone younger than 17? Since June 2021 have you done any sexual crime? and Since June 2021 have you been alone with anyone younger than 17?"

Wood testified that he also conducted both a pre-polygraph interview and a post-polygraph interview with Wood. He testified that the purpose of the pre-polygraph interview was to help formulate the relevant questions he would ask in the polygraph examination, so the interviewee was expected to tell the truth. In Barton's case, when Wood asked if anything had occurred between June 22[2] and December 9, he expected Barton to discuss it in the pre-polygraph interview. In the pre-polygraph interview, Wood asked Barton if he had committed any sexual crime and if he had done anything sexual with a child, and Barton did not say anything about his daughter.

On direct examination, Wood testified that, after the polygraph examination, Barton told him (1) that, when he bathed his daughter, he got an arousal, (2) that he felt funny when he touched his daughter, and (3) that, when he touched his daughter's vagina, he felt some arousal

---

[2]Before the December 9 examination, Barton's last polygraph examination was on June 22, 2022.

and was uncomfortable. Wood's notes from the interview reflected that he informed Barton of the results of the polygraph examination and asked him why he reacted to the question about sexual contact with someone younger than seventeen. At first, Barton responded that he had been having sexual thoughts about his wife's friend, Sarah. Wood then reminded him that the reaction was to sexual contact with someone underage. Barton then disclosed that, when he changed his daughter's diaper and bathed her, he felt uncomfortable, or had a funny feeling, when he saw her vagina.[3] Because Barton only disclosed the information in his post-polygraph interview, and not in his pre-polygraph interview, Wood thought Barton was trying to hide the information. Wood passed that information to Barton's counselor, Mandy Fine, the director of operations at Sereneco Wellness Center.

Fine testified that she had worked with Barton since September. After she received the results of the polygraph test, she talked with Barton about the question dealing with someone under seventeen. At first, Barton shared about feeling uncomfortable when he bathed or changed his daughter's diaper. As they continued to talk, Barton disclosed that he got into the bathtub naked with his wife and daughter. He also admitted that, when he was in the bathtub and touched his wife, he got aroused in front of his daughter. Fine asked him why he had not given that information to the polygraph examiner, and he said that he had not thought about it.

The State rested, and Barton did not call any witnesses in the true-or-not-true phase of the revocation hearing. After the parties' closing arguments, the trial court found the State's allegation to be true.

---

[3]Barton called his daughter's vagina her "no-no square."

4

## II.    Standard of Review

"We review a revocation of community supervision for an abuse of discretion." *Washington v. State*, No. 06-13-00211-CR, 2014 WL 1379643, at *1 (Tex. App.—Texarkana Apr. 8, 2014, no pet.) (mem. op., not designated for publication) (citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006)).  "The State must prove by a preponderance of the evidence that the defendant violated a condition of community supervision as alleged in the motion to revoke."  *Id.* (citing *Rickels*, 202 S.W.3d at 763–64).  "The State meets its burden of proof when the greater weight of the credible evidence creates a reasonable belief that the defendant violated a condition of his community supervision."  *Id.* (citing *Rickels*, 202 S.W.3d at 764).  "If a single ground for revocation is supported by a preponderance of the evidence and is otherwise valid, then an abuse of discretion is not shown."  *Id.* (citing *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980)).

In a hearing on a motion to revoke community supervision, "the trial court is the sole trier of fact" and the judge of "the credibility of the witnesses and the weight to be given their testimony."  *In re T.R.S.*, 115 S.W.3d 318, 321 (Tex. App.—Texarkana 2003, no pet.) (citing *Jones v. State*, 787 S.W.2d 96, 97 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd)).  "The trial court may accept or reject any or all of the witnesses' testimony."  *Jimerson v. State*, No. 06-18-00201-CR, 2019 WL 7286504, at *3 (Tex. App.—Texarkana May 22, 2019, no pet.) (mem. op., not designated for publication) (citing *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993)).  We examine the trial court's decision to revoke community supervision in the light most favorable to the trial court's judgment.  *In re T.R.S.*, 115 S.W.3d at 325.  "If there is some

evidence to support the finding of even a single violation, the revocation order must be upheld."
*Moore v. State*, No. 06-20-00064-CR, 2021 WL 3919393, at *3 (Tex. App.—Texarkana Sept. 2, 2021, pet. ref'd) (mem. op., not designated for publication) (citing *Cochran v. State*, 78 S.W.3d 20, 28 (Tex. App.—Tyler 2002, no pet.)).

## III.   The Trial Court's Finding is Supported by a Preponderance of the Evidence

In his sole point of error, Barton asserts that the trial court abused its discretion in revoking his community supervision because there is no evidence that he provided a deceptive response to his polygraph examination.  Barton argues that the disclosures he made in the post-polygraph interview and later to his therapist do not constitute sexual contact with someone under seventeen or any other sexual crime.  Since those were the questions asked by the polygraph examiner, he argues that there is no evidence that his answers were deceptive.  The State responds that, because those disclosures were only made after the polygraph examination in response to the same questions and because they constitute some evidence of both indecent exposure and indecency with a child, there is some evidence that Barton provided deceptive responses.

> A person commits [indecency with a child] if, with a child younger than 17 years of age, . . . the person:
>
> (1)    engages in sexual contact with the child or causes the child to engage in sexual contact; or
>
> (2)    with intent to arouse or gratify the sexual desire of any person:

6

> (A)     exposes the person's anus or any part of the person's genitals, knowing the child is present; or
>
> (B)     causes the child to expose the child's anus or any part of the child's genitals.

TEX. PENAL CODE ANN. § 21.11(a). As applicable to this case, "sexual contact" is defined as "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child," when such touching is "committed with the intent to arouse or gratify the sexual desire of any person." TEX. PENAL CODE ANN. § 21.11(c).

"A trial court may not admit polygraph examination evidence or consider it for any purpose." *Wright v. State*, 154 S.W.3d 235, 238 (Tex. App.—Texarkana 2005, pet. ref'd) (citing *Buckley v. State*, 46 S.W.3d 333, 336 (Tex. App.—Texarkana 2001, pet. dism'd, untimely filed)); *see also Leonard v. State*, 385 S.W.3d 570, 577 (Tex. Crim. App. 2012). However, "[s]tatements made during a polygraph pretest interview, during the polygraph examination itself, or during an interview after the examination, may be admissible evidence." *Wright*, 154 S.W.3d at 239.

Construed in the light most favorable to the trial court's finding, the evidence shows that Barton was asked in the pre-polygraph interview whether he had done anything sexual with a child and whether he had committed any sexual crime since his last polygraph examination. In his response, Barton did not disclose anything about his daughter. In his polygraph examination, Barton was also asked if he had had sexual contact with anyone younger than seventeen or if he had committed any sexual crime since his last polygraph examination. The evidence does not contain his specific responses to those questions.

7

However, the evidence shows that, in the post-polygraph interview, Barton was given the results of his polygraph examination and asked about his reaction to the question about sexual contact with someone younger than seventeen. Barton initially talked about his attraction to his wife's friend, and only after he was reminded that the question concerned sexual contact with someone under seventeen did he disclose, for the first time, that he experienced arousal when he saw and touched his daughter's vagina while he changed her diaper or bathed her.[4] Then, when he discussed that disclosure with his therapist, he made the further disclosure that he became aroused when he bathed naked with his wife and daughter.

The disclosures made by Barton in the post-polygraph interview and to his therapist support a reasonable belief that Barton committed either indecency with a child by contact or indecency with a child by exposure. In determining whether Barton gave a deceptive response in the polygraph examination, the trial court could consider (1) Barton's failure to mention his daughter when asked direct questions about doing anything sexual with a child or committing any other sexual crime, (2) Barton's initial evasive answer when asked in the post-polygraph interview about his reaction to the question in the polygraph examination about sexual contact with someone younger than seventeen, (3) his disclosure, for the first time, in the post-polygraph interview that he experienced arousal when he saw and touched his daughter's vagina while he changed her diaper or bathed her, and (4) his further disclosure to his therapist of arousal when he bathed with his wife and daughter. Based on this evidence, the trial court could reasonably infer that Barton gave a deceptive response in the polygraph examination. As a result, we find

---

[4]Wood's direct testimony differed somewhat from, but was not negated by, his notes of the interview. As trier of fact, the trial court could believe all his testimony and reconcile any differences in the testimony.

8

that a preponderance of the evidence supports the trial court's finding that he violated condition 33 of his community supervision.

Because a preponderance of the evidence supports the trial court's finding, we find that the trial court did not abuse its discretion in revoking Barton's community supervision. We, therefore, overrule his sole issue.

## IV. Conclusion

For the reasons stated, we affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:     May 2, 2023
Date Decided:     May 17, 2023

Do Not Publish